No. 5:26-cv-00114-JPB

---

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

---

In re HEART 2 HEART VOLUNTEERS INC., Debtor.

---

SHARON TRAVIS, Appellant,
v.
DEBORAH L. FISH, Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Bankruptcy Case No. 5:25-bk-00087

---

**BRIEF OF APPELLEE MATTHEW W. CHENEY, ACTING UNITED STATES TRUSTEE**

---

LISA A. TRACY
Deputy General Counsel
BETH A. LEVENE
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
Sumi.Sakata@usdoj.gov

MATTHEW W. CHENEY
United States Trustee for Region 4
GARY O. KINDER
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee
United States Courthouse, Room 2025
300 Virginia Street, East
Charleston, WV 25301
Tel.: (304) 347-3400
Gary.O.Kinder@usdoj.gov

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

STATEMENT OF APPELLATE JURISDICTION ..... 1

STATEMENT OF THE ISSUE ..... 2

STATEMENT OF THE CASE ..... 2

I. Statutory Framework ..... 2

- A. Appointment of Patient Care Ombudsmen ..... 2
- B. The role of the United States Trustee ..... 4

II. Statement of the Facts ..... 5

- A. Heart 2 Heart files for bankruptcy relief and Ms. Fish is appointed as the patient care ombudsman. ..... 5
- B. Ms. Fish reports problems with Heart 2 Heart's patient care and urges the appointment of a chief restructuring officer. ..... 6
- C. Heart 2 Heart retains a CRO, but problems arise between him and its CEO, Ms. Travis. ..... 10
- D. On the United States Trustee's motion, the bankruptcy court orders the appointment of a chapter 11 trustee ..... 13
- E. The chapter 11 terminates Ms. Travis's employment and Ms. Travis files multiple pleadings with the bankruptcy court, including the motion to remove Ms. Fish. ..... 17

SUMMARY OF THE ARGUMENT ..... 20

STANDARD OF REVIEW ..... 21

ARGUMENT ..... 22

I. The bankruptcy court did not abuse its discretion in declining to remove or replace Ms. Fish as Heart 2 Heart's patient care ombudsman. ..... 22

II. Ms. Travis's arguments lack merit. ..... 24

- A. The bankruptcy court did not abuse its discretion in rejecting Ms. Travis's arguments of bias ..... 24
- B. Ms. Travis cannot challenge the chapter 11 trustee's appointment through this appeal. ..... 28

CONCLUSION ..... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ampal-American Israel Corp.*,
534 B.R. 569 (Bankr. S.D.N.Y. 2015), *aff'd* 554 B.R. 604 (S.D.N.Y. 2016) ....27

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985) ....21, 22

*Bullard v. Blue Hills Bank*,
575 U.S. 496 (2015) ....1, 2

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ....29

*Committee of Dalkon Shield Claimants v. A.H. Robins Co.*,
828 F.2d 239 (4th Cir.1987) ....28

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) ....4

*Ivey v. First Citizens Bank & Trust (In re Whitley)*,
848 F.3d 205 (4th Cir. 2017) ....21

*Liteky v. United States*,
510 U.S. 540 (1994) ....26

*In re Marvel Ent. Grp., Inc.*,
140 F.3d 463 (3d Cir. 1998) ....28

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020) ....1

*In re SK Foods, L.P.*,
676 F.3d 798 (9th Cir. 2012) ....2

*Spartan Mills v. Bank of Am. Illinois*,
112 F.3d 1251 (4th Cir. 1997) ....29

*Turshen v. Chapman*,
823 F.2d 836 (4th Cir. 1987) ....................................................................2

*In re Ulmer*,
No. 97-30779, 1998 WL 110019 (5th Cir. 1998) ..............................................2

*Wall v. Rasnick*,
42 F.4th 214 (4th Cir. 2022) ....................................................................22

**Statutes**

11 U.S.C. § 101(14) ....................................................................3, 5, 25

11 U.S.C. § 307 ....................................................................4

11 U.S.C. § 333 ....................................................................1, 6, 18, 24, 25

11 U.S.C. § 333(a)(1) ....................................................................3, 5

11 U.S.C. § 333(a)(2)(A) ....................................................................3

11 U.S.C. § 333(b) ....................................................................4, 23

11 U.S.C. § 333(b)(2) ....................................................................24

11 U.S.C. § 333(b)(3) ....................................................................9

11 U.S.C. § 1102 ....................................................................7

11 U.S.C. § 1104(a) ....................................................................13

11 U.S.C. § 1121(b) ....................................................................7

11 U.S.C. § 1121(d) ....................................................................7

28 U.S.C. § 158(a)(1) ....................................................................1

28 U.S.C. § 158(a)(3) ....................................................................2

28 U.S.C. § 158(c)(2) ....................................................................2, 29

28 U.S.C. §§ 581 – 589 ....................................................................4

28 U.S.C. § 1334(a) ....................................................................1

Health Insurance Portability and Accountability Act of 1996.................................18

Pub. L. No. 109-8, § 1104(a)(1)..........................................................................3

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 333.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) .........................................................................22

Fed. R. Bankr. P. 2007.2 ..............................................................1, 3, 4, 22

Fed. R. Bankr. P. 8002 ....................................................................2, 29

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ......................4

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

The bankruptcy court had jurisdiction over the debtor's chapter 11 bankruptcy case under 28 U.S.C. § 1334(a). The bankruptcy court order denying the motion of appellant Sharon Travis to remove appellee Deborah Fish, who was appointed as the debtor's patient care ombudsman under 11 U.S.C. § 333 and Fed. R. Bankr. P. 2007.2, was entered on May 22, 2026. App321-323.[1]

That order was a final order under Fourth Circuit precedent. The Supreme Court has held that bankruptcy court orders are final and immediately appealable "if they finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (holding denial of plan confirmation is not a final order); *see also Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 589 U.S. 35, 43-44 (2020) (holding denial of motion for relief from automatic stay is a final order). Although pre-dating these decisions, the Fourth Circuit has held that an order refusing to remove a trustee based on alleged fiduciary-duty breaches is a final,

[1] References to "App___" are to the United States Trustee's appendix filed concurrently with this brief. References to "Bankr. Dkt. No. ___" are to docket entries in the bankruptcy case.

appealable order because it "finally resolve[s]" a "discrete controversy." *See Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir. 1987). By the same logic, the denial of a motion to remove a patient care ombudsmen is also a final order.[2]

Ms. Travis timely filed a notice of appeal under 28 U.S.C. § 158(c)(2) and Federal Rule of Bankruptcy Procedure 8002 on June 5, 2026. App324-325.

## STATEMENT OF THE ISSUE

Did the bankruptcy court abuse its discretion in denying Ms. Travis's motion to remove Ms. Fish as the debtor's patient care ombudsman after finding no appropriate grounds for her removal and instead finding a continued need for an ombudsman to protect patients?

## STATEMENT OF THE CASE

### I. Statutory Framework

#### A. Appointment of Patient Care Ombudsmen

In 2005, Congress amended the Bankruptcy Code to require the appointment of a patient care ombudsman within 30 days of the commencement of a health-care facility's bankruptcy case, unless the court finds such appointment unnecessary

[2] In decisions that also pre-date *Bullard*, other circuit courts have held that denials of motions to remove trustees are interlocutory orders. *See, e.g., In re SK Foods, L.P.*, 676 F.3d 798, 802 (9th Cir. 2012); *In re Ulmer*, No. 97-30779, 1998 WL 110019, at *1 (5th Cir. 1998). Nevertheless, even if the finality of the bankruptcy court's decision is open to question, this Court has discretion to hear appeals of interlocutory orders. 28 U.S.C. § 158(a)(3).

under the facts of the case. *See* Pub. L. No. 109-8, § 1104(a)(1) (2005) (codified at 11 U.S.C. § 333(a)(1)); *see also* Fed. R. Bankr. P. 2007.2. If the bankruptcy court orders the appointment, the United States Trustee must appoint a "disinterested person" to serve as the patient care ombudsman. 11 U.S.C. § 333(a)(2)(A).

The Bankruptcy Code defines a "disinterested person" as a person who:

- is not a creditor, equity security holder, or an insider;
- is not, and was not within two years before the bankruptcy petition was filed, a director, officer, or employee of the debtor; and
- does not have an interest "materially adverse" to the interest of the estate or any class of creditors or equity security holders, for any direct or indirect relationship to, connection with, or interest in, the debtor, "or for any other reason."

11 U.S.C. § 101(14).

Once appointed, a patient care ombudsman must:

(1) monitor the quality of patient care to the extent necessary under the circumstances, including interviewing patients and physicians;

(2) report to the court, not less than 60 days from the date of appointment and then every 60 days thereafter, at a hearing or in writing regarding the quality of patient care at the health care facility; and

(3) notify the court by motion or written report if the quality of patient care is declining significantly or otherwise materially compromised.

11 U.S.C. § 333(b).

The Bankruptcy Code does not expressly provide for the removal of an appointed patient care ombudsman. But the Bankruptcy Rules state that on the motion of the United States Trustee or a party in interest, the bankruptcy court may terminate an ombudsman's appointment that the court "finds unnecessary to protect patients." Fed. R. Bankr. P. 2007.2(d).

**B. The role of the United States Trustee**

The United States Trustee is an official of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581 – 589. United States Trustees are "charged with promoting the integrity of the bankruptcy system for all stakeholders," *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 212-13 (2024), and "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena," H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049. The United States Trustee "may raise and may appear and be heard on any issue in any case or proceeding under this title." 11 U.S.C. § 307.

## II. Statement of the Facts

### A. Heart 2 Heart files for bankruptcy relief and Ms. Fish is appointed as the patient care ombudsman.

Heart 2 Heart Volunteers Inc. ("Heart 2 Heart") operates addiction recovery and sober living treatment centers in Wheeling under the name Serenity Hills Life Center. App1-11; App13. Ms. Travis served as the President and CEO of Heart 2 Heart. App12.

In February 2025, Heart 2 Heart filed a voluntary chapter 11 bankruptcy petition. App1-11. In its petition, it declared it was a health care business as defined under the Bankruptcy Code. App2. But Heart 2 Heart moved to waive the appointment of a patient care ombudsman otherwise required under 11 U.S.C. § 333(a)(1). Bankr Dkt. No. 53. The United States Trustee objected, noting that Heart 2 Heart had provided no evidence that it had sufficient safeguards to ensure appropriate care for its patients. Bankr. Dkt. No. 68. After an evidentiary hearing, the bankruptcy court denied Heart 2 Heart's motion and ordered the appointment of an ombudsman. Bankr. Dkt. No. 107.

The United States Trustee appointed Ms. Fish as the patient care ombudsman. App16-26. In support of her appointment, Ms. Fish submitted an affidavit stating that she was a "disinterested person" as defined in 11 U.S.C. § 101(14), in that she:

(a) was not a creditor, equity security holder, or insider of the debtor;

(b) was not a director, officer, or employee of the debtor, nor had she been within two years before the filing of the bankruptcy petition; and

(c) did not have an interest materially adverse to the interests of the estate, or any class of creditors or equity holders.

App19-20.

### B. Ms. Fish reports problems with Heart 2 Heart's patient care and urges the appointment of a chief restructuring officer.

After her appointment, Ms. Fish filed reports regarding Heart 2 Heart's patient care as required under 11 U.S.C. § 333. *See*, *e.g.*, App27-34; App35-41; App42-48; App63-66; App67-71. Her first three reports, covering April to September 2025, found that patient care was adequate but noted certain operational issues that needed to be addressed. App31-33; App38-40; App45-48. These included insufficient staffing and the need for a full-time intake specialist. App31-33; App38-40; App45-48. From her first report, Ms. Fish observed that Ms. Travis accepted all calls and conducted the initial assessment of potential new residents but that she lacked the time necessary to devote to intake as a full-time specialist would. App32.

In the meantime, Heart 2 Heart sought and was granted a four-month extension of the exclusivity period in which only it could file a reorganization

plan.[3] Bankr. Dkt. No. 128, 133. In its first extension motion, Heart 2 Heart represented that it was in discussions with a potential chief reconstruing officer ("CRO"), who it posited could find ways to increase revenue and expand patient care. Bankr. Dkt. No. 128 at 4.

Heart 2 Heart did not seek to hire a CRO during the extended four-month period. *See* App335-337. At the end of the extended time, Heart 2 Heart sought a second extension of 90 days of the exclusive period to file a reorganization plan. App49-54. It argued that it needed to focus on its licensing approval and did not include further discussions of plans to hire a CRO. App52-53.

Ms. Fish objected to Heart 2 Heart's second exclusivity motion. App55-62. She argued that in the eight months following its bankruptcy petition, Heart 2 Heart had failed to take what she believed were actions necessary to reorganize. App56-57. She argued that Heart 2 Heart should retain a CRO. App57. Ms. Fish observed that the creditors in the case were inactive,[4] and questioned the independence of Heart 2 Heart's board of directors in overseeing its operations.

---

[3] Section 1121(b) of the Bankruptcy Code provides that "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter." 11 U.S.C. § 1121(b). This exclusivity period may be extended by the bankruptcy court for cause for a period of not more than 18 months after the petition date. 11 U.S.C. § 1121(d).

[4] The United States Trustee was unable to appoint a committee of unsecured creditors under 11 U.S.C. § 1102 due to insufficient interest among Heart 2 Heart's creditors to serve on such a committee. Bankr. Dkt. No. 117.

App57. She noted that despite the need for consistent intake, Ms. Travis had been "unwilling" to hire an intake specialist. App59. Ms. Fish also stated that Heart 2 Heart had "failed to stabilize the staff," and that since the chapter 11 case began, "more employees [had] been terminated, resigned, accepted employment and did not start, or left the same day as their start day than [were] currently employed." App60. She also reported that at the time of the filing of her objection, Heart 2 Heart lacked a case manager, as the former case manager had filed a criminal complaint against Ms. Travis for misdemeanor battery. App60 n.1.

Ms. Fish opined that a CRO would improve the work environment, increase the patient population, and ensure continuity of care for the residents. App60. She thus recommended that any further extension of the exclusivity period be conditioned on Heart 2 Heart's retention of a CRO. App61. The bankruptcy court granted the second extension motion without conditioning it on the retention of a CRO. Bankr. Dkt. No. 170.

On the same day as her objection to the second exclusivity motion, Ms. Fish filed another regular bimonthly report. App63-66. She noted that the West Virginia Office of Health Facility Licensure and Certification ("OHFLAC") had conducted an investigation of Heart 2 Heart in November 2025, and that the state agency would make its report available on the agency's website. App64-65. She reiterated her concerns about the lack of a case manager, and listed various

concerns related to Ms. Travis, including: (1) Ms. Travis may have violated laws governing patient privacy by posting information about a former patient on Facebook; (2) residents had complained to the state investigators about various issues, including that Ms. Travis might have been extending patients' stays beyond what their treatment team had approved; and (3) that on occasion, Ms. Travis was failing to gather sufficient information or misspelling medications during the intake process. App65.

Three weeks later, Ms. Fish filed a report under 11 U.S.C. § 333(b)(3) notifying the court of diminished patient care since her last report. App67-71. She reported that OHFLAC began a second investigation of Heart 2 Heart due to concerns about the residents' safety. App68. Ms. Fish highlighted "numerous issues" that had arisen, including that: (1) although Heart 2 Heart had hired a new case manager, the understaffing problem was worsening; (2) none of the residents were receiving individual therapy as required; and (3) over the holiday weekend, Heart 2 Heart lacked staff to complete assessments of new patients within 72 hours as required. App69-70. Ms. Fish argued it was "imperative" that a CRO be appointed as soon as possible. App70.

### C. Heart 2 Heart retains a CRO, but problems arise between him and its CEO, Ms. Travis.

A week after Ms. Fish's report of diminished patient care, Heart 2 Heart moved for leave to hire a CRO, which the bankruptcy court granted. Bankr. Dkt. 175, 185.

Three weeks after the bankruptcy court authorized the CRO's appointment, Heart 2 Heart's counsel filed an expedited motion requesting an emergency status conference. App72-81. Counsel reported that the CRO had begun advising Heart 2 Heart but that his "decisions and directives have been countered and often overruled by" Ms. Travis, reflecting "a dispute as to who has the authority to direct" Heart 2 Heart. App74. He also reported that Ms. Travis believed that the CRO had resigned, although the CRO stated he had not. App75. Counsel also reported that the CRO and Ms. Travis "have differing views on" Ms. Fish's concerns. App74. In light of the concerns to patient health and safety, counsel requested an emergency status conference to get clarity on the CRO's authority. App75.

After the bankruptcy court scheduled the status conference, Bankr. Dkt. No. 197, Ms. Travis moved to continue the hearing until a later date. App82-135. She asserted that the board of directors had voted to accept the CRO's resignation and to terminate Heart 2 Heart's bankruptcy counsel. App83. Her motion referred to a

dispute between Ms. Travis and the CRO over retention of a behavioral health managing company. App83.

The bankruptcy court denied Ms. Travis's motion to continue the status conference. Bankr. Dkt. No. 200. At the January 2026 status conference, counsel for Heart 2 Heart reported that the board of directors had been reconstituted without his knowledge and he was unsure who was making decisions. App355-356. He explained that Ms. Travis disputed the CRO's authority to engage professionals for the debtor, notwithstanding the CRO's engagement letter. App356. Counsel requested direction from the bankruptcy court, suggesting three options: (1) the CRO remains in place with authority to make decisions and reorganize; (2) the CRO is terminated and current management remains in control, in which case counsel would request permission to withdraw; and (3) a chapter 11 trustee is appointed. App358-59.

Ms. Fish testified at the hearing. App364-379. She identified Heart 2 Heart's "immense potential" to serve the community but stated that the debtor had not been able to materialize its vision. App365-66. Ms. Fish stated that Heart 2 Heart continued to struggle with staffing, intake, and certain patients whose needs were too acute for Heart 2 Heart to meet given its lack of resources. App366-367. She understood that Ms. Travis wanted to help but Ms. Fish believed Ms. Travis had taken on so many duties that various issues fell through the cracks. App368;

App372. Ms. Fish opined that the program "needs some better leadership right now." App373.

The CRO also testified, noting that there were "issues with the culture in the workplace," as Ms. Travis typically made decisions at the facility "almost . . . on a whim" and not according to policies and procedures. App382. He noted that the staff feared losing their license as they could not properly care for the high-needs patients, and that the "significant" staff turnover at the facility appeared to stem from employees' disagreements with Ms. Travis rather than from poor job performance. App383-384. The CRO then hired a management company, who agreed with the CRO's assessment that there was a "cultural issue" at the facility that hindered employees from performing their duties. App384. When the CRO submitted a report to Heart 2 Heart's board of directors with his findings, however, Ms. Travis "provided significant pushback" on hiring the management company. App385.

The court also heard testimony from Ms. Travis, who stated that "there is a lot of things here that are not facts." App389. She asserted that the CRO had no experience with healthcare and was supposed to assist with Heart 2 Heart's finances, not be part of management. App391. She confirmed that she and the board had recently updated the board of directors' by-laws to allow for a board of just four members, and they did so without consulting Heart 2 Heart's bankruptcy

counsel or the CRO. App397-398; App400. She argued that the "noise" about her was the "retaliation of disgruntled employees," and that, for the same reason, Ms. Fish had been given misinformation. App411-412.

Counsel for the United States Trustee opined that the dispute between the management and the CRO was not sustainable, and the appropriate course was to appoint a chapter 11 trustee. App428. He represented that he would move for leave to appoint a trustee shortly thereafter. App430. The bankruptcy court agreed that the facts "crie[d] out" for an independent trustee. App433.

Following the status conference, the bankruptcy court issued an order directing that the CRO would direct day-to-day operations of Heart 2 Heart but would hold in abeyance the behavioral health management agreement and required the CRO to obtain approval from either the board of directors or the bankruptcy court before making "major decisions." App136-138. The court further ordered Ms. Travis to refrain from interfering with the CRO's decisions. App137.

### D. On the United States Trustee's motion, the bankruptcy court orders the appointment of a chapter 11 trustee.

A week after the bankruptcy court issued its order clarifying the CRO's authority, the United States Trustee moved to appoint a chapter 11 trustee to take over management of Heart 2 Heart under 11 U.S.C. § 1104(a). App139-158. Citing the tension between the CRO and Ms. Travis, the age of the bankruptcy case, Heart 2 Heart's continuing operational losses, and the concerns over patient

care raised by Ms. Fish, the United States Trustee argued there was cause to appoint a trustee and that such appointment was in the interest of Heart 2 Heart's creditors and residents. App140.

Ms. Travis objected. App159-161. She claimed there were accusations against her, including by Ms. Fish, that Ms. Travis asserted were untrue. App159. She contended that Heart 2 Heart would not exist without her efforts, and they needed more time to find counsel and have an evidentiary hearing. App160.

In support of his motion, the United States Trustee solicited witness testimony of the CRO and Ms. Fish and submitted the OHFLAC report on Heart 2 Heart. App162-191. The report listed various deficiencies OHFLAC observed at Heart 2 Heart, including, as just some examples: (i) Ms. Travis's acceptance of two new residents with disabilities even though the facility was not ADA-compliant, App166-168; and (ii) Ms. Travis's violation of a patient's privacy by posting about the patient's case on social media, App171-173.

At the hearing on the United States Trustee's motion, the CRO testified that Heart 2 Heart had a "fractured work environment," as there were "interpersonal conflicts throughout the organization" that led to an "inefficient" work environment. App455. He expressed his belief that the board of directors lacked independence from Ms. Travis as CEO. App461. He testified that he was unaware of whether the board was conducting an independent investigation of the OHFLAC

findings. App467. Ms. Travis disputed the truth of the OHFLAC's findings, arguing that the agency was targeting her because she was suing the agency's decision-maker. App463-464. But the CRO testified that if a state regulatory agency had a vendetta against the debtor's CEO, this would hinder the CEO's ability to reorganize. App467.

Ms. Fish also testified at the hearing. App484-498. She repeated her opinion that intake and insufficient staffing continued to be a problem at Heart 2 Heart. App485-486. She observed that the staffing had stabilized since the CRO was appointed but expressed concern that if a trustee were not appointed, "certain members of the staff may resign." App487-88. She testified that she had reviewed the OHFLAC report, which she stated was consistent with her observations as ombudsman. App488-489.

Ms. Fish also stated that she had been appointed as a patient care ombudsman in 25 to 30 cases, and that Heart 2 Heart was the first time she had objected to an exclusivity motion. App490. She affirmed that the basis for her objection was her concerns with the direction of Heart 2 Heart's case. App490. And she believed that appointment of a chapter 11 trustee was in the best interest of the residents, the creditors, and the public. App490-491.

In argument, the United States Trustee observed that the case had been open for almost a year, and Heart 2 Heart's monthly operating reports showed no

progress in terms of increasing income to fund a feasible plan. App533. The United States Trustee argued that, although Heart 2 Heart hired a CRO, "it immediately became apparent that . . . the current management and the CRO could not . . . coexist." App533. He noted that Ms. Travis did not wish to continue to employ Heart 2 Heart's bankruptcy counsel and stated his belief that the case could no longer stay in chapter 11 as it was. App534. Because dismissal of the bankruptcy case would likely lead to foreclosure on Heart 2 Heart's property, the United States Trustee argued that appointment of a chapter 11 trustee was the best option. App535.

After listening to the argument and testimony of Ms. Travis and another witness in support of Ms. Travis's objection to the appointment of a trustee, App501-532, the bankruptcy court stated that it had a "complete record" for its decision. App537. It noted that previously, there had been a "highly contested hearing" over the appointment of Ms. Fish. App537. The court stated that some prior employees had raised concerns regarding the facility, how patients' complaints were managed, and how "Ms. Travis was the central point for everything" at the facility. App537-538. While recognizing Ms. Travis's efforts in building Heart 2 Heart and the debtor's "vital service" to the community, the bankruptcy court found that the concerns that led to Ms. Fish's appointment continued to be a problem a year into the bankruptcy case. App538-539.

Ultimately, the bankruptcy court granted the motion for a chapter 11 trustee and the United States Trustee appointed a chapter 11 trustee. Bankr. Dkt. Nos. 219, 227, 228, & 230. Ms. Travis did not appeal the order appointment the chapter 11 trustee. *See* App342.

Following the chapter 11 trustee's appointment, Ms. Fish filed another bimonthly report. App192-197. She reported that the trustee "brought stability, fostered a sense of impartiality, and inspired the staff." App197.

### E. The chapter 11 terminates Ms. Travis's employment and Ms. Travis files multiple pleadings with the bankruptcy court, including the motion to remove Ms. Fish.

Less than two months after his appointment, the chapter 11 trustee terminated Ms. Travis's employment with Heart 2 Heart. App198-199. In the termination letter, the trustee stated that he had developed concerns about Ms. Travis's continued service as CEO. App198. After placing her on administrative leave, the trustee appointed a special committee to investigate the residents' concerns. App198. Based on the special committee's investigation, the trustee determined that Heart 2 Heart's estate was best served by Ms. Travis's removal as CEO. App198.

Ms. Travis then began filing multiple pleadings with the bankruptcy court, including, for example:

- A letter asserting that she was being retaliated against for telling the CRO and the chapter 11 trustee about compliance issues and raising claims of a breach of the trustee's duty of care, Bankr. Dkt. 257;
- Two motions to strike prior witness testimony from the hearing to appoint a patient care ombudsman, asserting they testified falsely and in retaliation, Bankr. Dkt. 248 & 258-1; and
- A motion to seal any filings she made and any responses, because she asserted the documents were being used to make defamatory statements about her on Facebook, Bankr. Dkt. 271.

Additionally, Ms. Travis filed her "Motion for Removal or Replacement of the Ombudsman." App211-320.[5] The 110-page motion, including attachments, asserted that Ms. Fish was not impartial, as required by 11 U.S.C. § 333, but was instead colluding with staff members against Ms. Travis. App212. Ms. Travis argued that Ms. Fish's reports to the court were based on "skewered and malicious[ly] fabricated information." App213. She asserted that Ms. Fish undermined Ms. Travis's authority as CEO, impeding Heart 2 Heart's ability to operate efficiently. App213. Ms. Travis claimed that Ms. Fish reported only

[5] At Ms. Fish's request, that motion was subsequently partially sealed by the bankruptcy court as containing protected health information under the Health Insurance Portability and Accountability Act of 1996. Bankr. Dkt. 283 & 310. Docket number 273-1 is the public version of the motion that omits the pages containing protected health information.

deficiencies that reflected poorly on Ms. Travis and failed to report other violations by the clinical team. App213. And she argued that it was these "bad faith reports" that caused Ms. Travis to lose her business to the chapter 11 trustee. App213.

Two days later, before the United States Trustee or anyone else could file an objection,[6] the bankruptcy court denied the motion to remove Ms. Fish. App321-323. As background, the court observed that it had appointed Ms. Fish as the patient care ombudsman in April 2025 and approved the chapter 11 trustee's appointment nearly a year later. App321. It further noted that Ms. Travis had been terminated from her role as Heart 2 Heart's CEO, and that "relations between Ms. Travis and the current administration of the estate have substantially deteriorated as a result." App322.

The bankruptcy court held that the patient care ombudsman was statutorily required to report to the court, and not "to serve as an advocate for the debtor, creditors, former management, or any other party in the case." App322. It observed that the ombudsman "has discretion on what matters are relevant and necessary to report" to the court, and that it was the bankruptcy court, rather than any individual party in interest, who determined what weight to give the ombudsman's reports and whether continued appointment was necessary. App322.

[6] The bankruptcy court observed that requiring any response from the chapter 11 trustee or Ms. Fish would result in unnecessary costs to the estate. App322 n.3.

The bankruptcy court held that to the extent that Ms. Travis disagreed with the substance or conclusions of Ms. Fish's reports, "such disagreement alone does not constitute sufficient cause for removal." App322. It found the bulk of Ms. Travis's motion raised "generalized employee grievances" and allegations related to "broader disputes" over the estate's administration. App322. And the court noted Ms. Travis's other pleadings reflected "a common theme of grievances and allegations regarding the appointment of the Trustee and her removal as an officer of the Debtor." App322 n.2. It held that to the extent Ms. Travis was "attempting to challenge or circumvent the appointment of the Trustee, such effort [was] procedurally improper and untimely." App322 n.2.

Finding no "appropriate grounds" for Ms. Fish's removal and instead finding a continued need for an ombudsman for the protection of patients, the bankruptcy court denied Ms. Travis's removal motion. App322-323. This appeal followed.

## SUMMARY OF THE ARGUMENT

The bankruptcy court did not abuse its discretion in declining to remove Ms. Fish. Ms. Fish, an experienced patient care ombudsman who has been appointed in 25 to 30 bankruptcy cases, represents the interests of Heart 2 Heart's patients before the bankruptcy court. As part of her duties, Ms. Fish reported that she had concerns about Heart 2 Heart's management and how it was impacting the patients.

She thus advocated for the appointment of a chapter 11 trustee. Based on the record, the United States Trustee and the bankruptcy court agreed.

Ms. Travis's motion to remove Ms. Fish for alleged bias came only after the chapter 11 trustee terminated Ms. Travis as CEO for Heart 2 Heart. Ms. Travis's opening brief makes clear that she blames Ms. Fish for her role in the events that led to that termination. But the bankruptcy court found that the case continued to need a patient care ombudsman to protect patients and found no appropriate grounds that supported removal of Ms. Fish as ombudsman. Accordingly, the bankruptcy court denied Ms. Travis's removal motion.

The record supports the court's findings. Ms. Travis's arguments that Ms. Fish is not disinterested are without merit. And her complaints regarding the appointment of the chapter 11 trustee are an impermissible collateral attack on a final, unappealed order. The bankruptcy court's order denying the motion to remove Ms. Fish should be affirmed.

## STANDARD OF REVIEW

This Court reviews findings of fact for clear error and conclusions of law *de novo*. *Ivey v. First Citizens Bank & Trust (In re Whitley)*, 848 F.3d 205, 207 (4th Cir. 2017). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*

*City*, 470 U.S. 564, 573 (1985) (citation modified). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* A trial court "abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (citation modified).

## ARGUMENT

### I. The bankruptcy court did not abuse its discretion in declining to remove or replace Ms. Fish as Heart 2 Heart's patient care ombudsman.

Congress provided for the appointment of a patient care ombudsman in bankruptcy cases of health care businesses to ensure patients' interests are adequately represented to the bankruptcy court. *See* 3 COLLIER ON BANKRUPTCY ¶ 333.01 n.2 (Richard Levin & Henry J. Sommer eds., 16th ed.) (quoting Senator Leahy on prior Senate bill with similar provision to "establish[ ] an ombudsman to provide a voice for all health care patients, making sure that judges are well aware of all the facts in balancing the interests between the creditor and the patients").

The Bankruptcy Code does not address when an ombudsman may be terminated but the Bankruptcy Rules provide for termination when the bankruptcy court finds an ombudsman "unnecessary to protect patients." Fed. R. Bankr. P. 2007.2(d). Here, the bankruptcy court expressly found that the continued appointment of an ombudsman was necessary to protect patients. App322. The

record supports this finding. Throughout the course of the bankruptcy case, Ms. Fish had reported concerns regarding Heart 2 Heart's patient care. *See*, *e.g.*, App27-34; App35-41; App42-48; App63-66; App67-71. OHFLAC also highlighted certain operational deficiencies. App164-183. And although Ms. Fish reported that conditions had improved following the chapter 11 trustee's appointment, App197, reorganizational efforts continued and nothing in the record indicated all of Heart 2 Heart's problems had been resolved. Indeed, Ms. Travis's own motion asserted continued operational issues implicating patient care. App233-234 (citing low patient numbers, failure to monitor clinical staff, and patient complaints, among other things).

The bankruptcy court further found that Ms. Travis had not demonstrated that Ms. Fish had failed to perform any of her statutory duties because Ms. Travis's motion was based primarily on her disagreement with Ms. Fish's conclusions. App322. The record supports this finding, as Ms. Fish regularly reported to the bankruptcy court as required under 11 U.S.C. § 333(b), including filing a report on an urgent basis when she found the quality of patient care to be declining significantly. App27-34; App35-41; App42-48; App63-66; App67-71; App192-197; App364-379. Ms. Travis argues that Ms. Fish omitted filing a Sixth Report in alleged violation of her statutory and fiduciary duties. *Appellant's Brief* at 33. But Ms. Fish did, in fact, make a Sixth Report; she did so orally at the emergency

status conference in January 2026. App364-379. The Bankruptcy Code is clear that the ombudsman's report may be "at a hearing or in writing." 11 U.S.C. § 333(b)(2). Thus, when Ms. Fish submitted her Seventh Report in March 2026, she noted that her Sixth Report had been "made in court" in January.[7] App193 n.1. For this reason, Ms. Travis's various arguments related to the allegedly missing report, including her claim that the bankruptcy court acted without a complete record, are misplaced. Appellant's Brief at 29-35.

Because the bankruptcy court found, and the record supports, that Heart 2 Heart's bankruptcy case continued to require an ombudsman for patient protection and there was no basis to remove Ms. Fish, it was not an abuse of discretion to deny Ms. Travis's motion to terminate Ms. Fish's appointment.

## II. Ms. Travis's arguments lack merit.

### A. The bankruptcy court did not abuse its discretion in rejecting Ms. Travis's arguments of bias.

Although Ms. Travis's opening brief is difficult to parse, the thrust of her argument is that Ms. Fish allegedly exhibited bias and was thus not disinterested as required under 11 U.S.C. § 333 and—for the same reason—violated a duty to remain neutral. *Appellant's Brief* at 26, 51. In support, Ms. Travis argues that Ms.

[7] It appears Ms. Fish misidentified the date of the hearing as January 30, rather than January 23, 2026. App193 n.1. As she filed her Seventh Report on March 27, 2026, she was only four days past the 60-day reporting deadline. App197.

Fish reported alleged misinformation from staff members to the bankruptcy court without first confirming the information with Ms. Travis. *Appellant's Brief* at 26. She also argues that Ms. Fish improperly did not report misconduct by staff whom Ms. Fish favored, failed to report alleged patient abuse under the CRO's and chapter 11 trustee's supervision, and improperly advocated against Ms. Travis. *Appellant's Brief* at 27, 51. Ms. Travis has failed to show that the bankruptcy court abused its discretion.

The Bankruptcy Code provides that a "disinterested person" is one without a "materially adverse" interest to the estate or any class of creditors or equity security holders, for any reason. 11 U.S.C. § 101(14). Ms. Travis's disagreement with Ms. Fish's decisions on what to include in her reports to the bankruptcy court is not evidence of a "materially adverse" interest and, thus, as the bankruptcy court found, it is not grounds for Ms. Fish's removal. App322. Ms. Travis mainly complains that Ms. Fish spoke with patients and staff and reported on what they told her; but that was part of Ms. Fish's duties.[8] Although Ms. Travis argues that the bankruptcy court erred in holding that Ms. Fish had discretion on what to report, she provided no caselaw or other authority in support of this proposition. *Appellant's Brief* at 41-42. And while Ms. Travis argues that "mandatory

[8] Section 333(b)(1) specifies that part of a patient care ombudsman's monitoring duties include interviewing patients and physicians.

reporting laws" required Ms. Fish to include what Ms. Travis wanted in the reports, she failed to identify what laws those were or how they applied to a patient care ombudsman appointed by a bankruptcy court. *Id.*

Ultimately, Ms. Travis complains that Ms. Fish found various Heart 2 Heart's staff members to be more credible than herself and that Ms. Fish contributed to her ouster. Even if true, this is not evidence of impermissible bias. In the context of judicial recusal, the Supreme Court has held that "'[p]artiality' does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Liteky v. United States*, 510 U.S. 540, 552 (1994). Much like judges who form opinions based on the proceedings before them, *id.* at 555, ombudsmen may form opinions based on their work with the debtor and its staff. Such opinions are not the basis for removal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Ms. Fish's reports do not show such deep-seated favoritism or antagonism.

The record reflects that Ms. Fish recognized Ms. Travis's desire to help others but believed the debtor needed new leadership to improve patient care. App368; App372; App373. Ms. Fish observed that Ms. Travis was responsible for providing an "appropriate environment for the residents," which included "[m]aintaining a cohesive and consistent staff," but staff turnover continued to be a problem. App60. Moreover, Ms. Fish's concerns about Ms. Travis were also held

by the CRO, an outside management company, the chapter 11 trustee, and the special investigation committee that recommended Ms. Travis's termination.[9] App382; App384; App198.

To the extent Ms. Travis maintains that Ms. Fish failed to report on misconduct by the CRO or chapter 11 trustee, it was within the bankruptcy court's discretion to consider the "substantially deteriorated" relationship between Ms. Travis and Heart 2 Heart's current administration in weighing Ms. Travis's arguments. App322. *See In re Ampal-American Israel Corp.*, 534 B.R. 569, 588 (Bankr. S.D.N.Y. 2015) (holding that the court's discretion in denying motion to remove trustee was "informed by the history of the case and the nature of the opposition" where a "long history of enmity" between the debtor's former management and its bondholders had "spilled into this Court"), *aff'd* 554 B.R. 604 (S.D.N.Y. 2016). As the bankruptcy court observed, Ms. Travis had filed various pleadings with "a common theme of grievances" regarding the chapter 11 trustee's appointment and her own removal as CEO. App322 n.2. Ms. Travis's motion to remove Ms. Fish is part of this same pattern.

---

[9] Of note, both the CRO and Heart 2 Heart's bankruptcy counsel were selected and retained by the debtor under the direction of Ms. Travis, rather than appointed by the United States Trustee. Bankr. Dkt. 12 & 175. Yet, Ms. Travis later accused even the professionals who were chosen freely by Heart 2 Heart of colluding against her, much as she later accused Ms. Fish. App83 (stating the belief that counsel was not representing the best interest of the company but was instead representing the CRO).

Ms. Travis maintains that the bankruptcy court erred by basing its decision on the case's continued need for an ombudsman, rather than considering whether to replace Ms. Fish with another ombudsman. *Appellant's Brief* at 35-37. But because the bankruptcy court did not abuse its discretion in rejecting Ms. Travis's claims that Ms. Fish was biased, it did not abuse its discretion in declining to consider whether to replace Ms. Fish. There was simply no need to do so.

**B. Ms. Travis cannot challenge the chapter 11 trustee's appointment through this appeal.**

Ms. Travis argues that Ms. Fish's actions led to "the loss of [Ms. Travis's] standing as the debtor" through the appointment of the chapter 11 trustee and complains that the bankruptcy court improperly considered inadmissible hearsay in Ms. Fish's reports when deciding to appoint the chapter 11 trustee. *Appellant's Brief* at 28, 43. Ms. Travis ignores that there were multiple reasons why the United States Trustee moved for the trustee appointment, and that the bankruptcy court heard testimony and received exhibits before deciding that motion. *See supra*, Statement of Facts, Section II.D. But more importantly, as the bankruptcy court held, if Ms. Travis is "attempting to challenge or circumvent the appointment of the Trustee, such effort is procedurally improper and untimely." App322 n.2.

The appointment of the chapter 11 trustee was an immediately appealable final order. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998); *see also Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 241

(4th Cir.1987) (holding that order denying appointment of chapter 11 trustee was immediately appealable). Ms. Travis failed to appeal that order within the required time. *See* 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002. She cannot collaterally attack that order now. *Celotex Corp. v. Edwards*, 514 U.S. 300, 305–07, (1995) (holding a collateral attack on a bankruptcy order cannot be permitted "without seriously undercutting the orderly process of the law"); *Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251, 1258 (4th Cir. 1997) (same).

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to affirm the bankruptcy court's order denying the motion to terminate Ms. Fish's appointment as patient care ombudsman.

Respectfully submitted,

MATTHEW W. CHENEY
United States Trustee for Region 4

September 23, 2026

By: */s/ Gary O. Kinder*
GARY O. KINDER
Assistant United States Trustee

LISA A. TRACY
Deputy General Counsel
BETH A. LEVENE
Associate General Counsel
SUMI SAKATA
Trial Attorney

Department of Justice
Executive Office for

MATTHEW W. CHENEY
United States Trustee for Region 4
GARY O. KINDER
Assistant United States Trustee
HUGH M. BERNSTEIN
Trial Attorney

Department of Justice
Office of the United States Trustee

United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
Sumi.Sakata@usdoj.gov

United States Courthouse, Room 2025
300 Virginia Street, East
Charleston, WV 25301
Tel.: (304) 347-3400
Gary.O.Kinder@usdoj.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g), this document contains 6,708 words.

This document complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Gary O. Kinder*
GARY O. KINDER
Assistant United States Trustee

## CERTIFICATE OF SERVICE

I certify that on September 23, 2026, I caused this brief to be served via the CM/ECF Electronic Filing system and by first class mail to:

Ms. Sharon Travis
930 Main Street
Wheeling, WV 26003

*/s/ Gary O. Kinder*
GARY O. KINDER
Assistant United States Trustee